UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATONYA EDWARDS**<br>*on behalf of S.V.C., Jr.* | **CIVIL ACTION** |
| **VERSUS** | **NO 06-00361** |
| **COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "A"(4)** |

### REPORT AND RECOMMENDATION

**I.  Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **42 U.S.C. § 405(g)**.  The Commissioner denied Latonya Edward's claim made on behalf of her minor son for Supplemental Security Income Benefits ("SSI") under Title II of the Social Security Act.  *See*  42 U.S.C. § 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**II.  Factual Summary**

The claimant, Latonya Edwards, filed this appeal on behalf of her minor son, S.V.C. Jr. a four years and nine-month-old boy whose is allegedly disabled due to asthma.  S.V.C. was 18 months old at the time the application for benefits was filed, and three years and three months old at the time of

the administrative law judge's decision. (Tr. 11, 18). Edwards filed the application for benefits on November 19, 2003 and the application was denied on January 13, 2004. (Tr. 20). On March 11, 2004, Edwards filed a request for a hearing which took place before Administrative Law Judge ("ALJ") Penny M. Smith on May 16, 2005. (Tr. 11-18).

On August 12, 2005, the ALJ concluded that S.V.C. was not disabled under the Social Security Act. (Finding 7, Tr. 18). She found that S.V.C. suffered from asthma but did not meet or medically equal the criteria for an impairment listed in Part B, or part A of Appendix 1, Subpart P, Regulations No. 4. (Finding 4, Tr. 18). She also found that S.V.C. did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning and that his impairment did not functionally equal the severity of any listed impairment. *See* 20 CFR 426.924(d)(2) and 416.926(a). (Finding 5, Tr. 18). She further found S.V.C.'s subjective complaints credible only to the extent that the complaints supported by the evidence summarized in the body of the decision. (Finding 6, Tr. 18).

Edwards sought review of the decision by the Appeals Council. However on December 2, 2005, the Appeals Council denied her request for review. (Tr. 3-5). She now seeks review of the ALJ's decision in this Court.

Edwards contends that the ALJ erred in reviewing her son's application because (1) the ALJ should have concluded that S.V.C. met the Listing Level requirement of 103.03(B) as he had more than six inpatient visits for asthma as required by the regulations; and (2) the case should be remanded to a different ALJ who should be required to consider the medical evidence submitted to the ALJ before the ruling but which was not considered even though the ALJ requested the evidence.

The Commissioner contends that the ALJ properly determined that S.V.C.'s impairment was not of the severity to meet, medically equal or functionally equal any impairment listed in 20 C.F.R.

pt. 404, subpt. P, app.1. The Commissioner further contends that the additional material provided by Edwards do not require remand.

**III.    Standard of Review**

    **A.    Statutory and Regulatory Framework**

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 1382c(a)(3)(C)(i).

The Commissioner follows a three step process in determining childhood disabilities. *See* 20 C.F.R. § 416.924. A child qualifies for SSI benefits if the Commissioner determines that (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. Pt. 404. Supbpt. P., app.1 (" listed impairment(s)") and meets the durational requirement. *Id.*

    **B.    Judicial Review**

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *See id.* If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "It is more than a mere scintilla and less than a preponderance." *Id.* It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history." *Hendricks v. Apfel*, CIV.A.99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000)(citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

**IV.**     **Was the ALJ's determination that S.V.C. did not meet listing Level 103.03B based upon substantial evidence?**

Edwards contends that the ALJ erred when she concluded that S.V.C.'s asthma did not meet the Listing Level at 103.03(B). The Commissioner contends that the ALJ properly considered and explained why S.V.C.'s asthma did not meet the listing level requirement.

Under 20 C.F.R. Pt. 404 Subpt. P. App. 1 Pt. B(103.03) a child meets the listing requirements for asthma when the evidence shows the child has either:

      A.      $FEV_1$ equal to or less than the value specified in table I of 103.02A ;

>   Or
>
>   B.  Attacks (as defined in 3.00 C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;
>
>   Or
>
>   C.  Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
>
>       1.  Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or
>
>       2.  Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

Edwards does not contend that S.V.C. met the 103.03(A) listing level requirement. Instead she contends that her son met the requirements of 103.03(B) and ( C).

Under the governing regulations, S.V.C. could meet the listing level requirement set forth in 103.03(B) if he (1) had an attack which is defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment such as an intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting and (2) despite receiving treatment he continued to have asthma attacks once every two months or six times in a twelve month calendar year.[1]

When assessing S.V.C.'s asthma, the ALJ noted that S.V.C. was seen on a fairly regular basis at the Leonard J. Chabert Medical Center ("LJCMC") from May 15, 2002 through the present. (Tr.1 4). He was consistently diagnosed with reactive airway dysfunction or disease ("RAD") and BOM

---

[1] Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

(bilateral otitis media) but on most occasions his lungs were clear. *Id*. The ALJ further noted that S.V.C. occasionally had symptoms of upper respiratory tract infection. *Id*. When he experienced sign of pulmonary congestion, he was treated with Pulmicort[2] and Orapred.[3] Finally, the ALJ noted that S.V.C.'s rhinitis and BOM were treated with antibiotics. (Tr. 14). After a reviewing the records, the ALJ concluded that S.V.C. was not disabled.

The record shows that S.V.C. was initially diagnosed with RAD[4] on December 16, 2006. (Tr. 129). RAD, although different from asthma, is sometimes used interchangeably with asthma.

On July 2, 2002, S.V.C. returned to the pediatric section of LJMC because he was vomiting on Similac. On this visit, his lungs were clear. (Tr. 124). He returned on August 30, 2002 and on this visit he continued with his formula intolerance but again his lungs were clear. ( Tr. 123).

On June 12, 2002, his mother took him to LJMC because he had an upper respiratory infection. (Tr. 127). He presented with symptoms of coughing, runny nose and crying. *Id*. He was admitted to the hospital for four days. *Id*. His chest x-ray was negative. *Id*. He was started on an IV of Ampicillin and Claforan. *Id*. He was discharged on Amoxcillin and instructed to take it for 10 days and Fer-In-Sol for one month. *Id*.

On December 13, 2002, S.V.C. returned to LJMC for a pediatric check up. (Tr. 115). On this occasion his mother's chief complaint was that he had a yellow runny nose. *Id*. The physical assessment indicates that the physician noticed scattered wheezing in his lungs. *Id*. He was diagnosed

---

[2]Pulmicort is used for the maintenance treatment of asthma in children twelve months to eight years of age. PHYSICIAN'S DESK REFERENCE,629, 59th ed.(2005) (hereinafter "PDR").

[3]Orapred can be used to control severe or incapacitating allergic conditions. PDR at 966.

[4] "Reactive airway disease" is a general term and does not indicate a specific diagnosis. It may be used to describe a history of coughing, wheezing or shortness of breath due to undetermined cause. These signs and symptoms may or may not be caused by asthma

with reactive airway disease and prescribed Albuterol.[5]  The nurse also issued  prescription for a compressor nebulizer[6]. (Tr. 113).

He returned for treatment on December 16, 2002. (Tr. 111). The diagnosis of RAD remained and he was continued on Amoxcil, Orapern, and the nebulizer. (Tr. 111).

On December 19, 2002, he again returned to LJMC for medical treatment and presented with a complaint of coughing. (Tr. 110). His diagnosis remained unchanged. He was prescribed Pulmicort, instructed to continue on Amoxcil and the ventilator. *Id.* He was further asked to return in one week for a follow-up. *Id.* However there is no record of S.V.C. returning as recommended.

On February 5, 2003, he again returned and his mother's complaint was head congestion with green runny nose and wheezing at time. (Tr. 109). Again he was diagnosed with RAD and prescribed Cefzil[7], Pulmicort[8] and Albuterol. *Id.* He was further given a return visit of March 11, 2003. *Id.*

On April 30, 2003 he returned to the clinic and his diagnoses of RAD remained unchanged and it was noted that he also had an ear infection. (Tr. 106). He was observed as alert and active on this visit and his mother was instructed to use a ventilator and return in two weeks. *Id.*

On July 14, 2003, he returned with a complaint of nasal congestion. (Tr. 103). He presented with yellow discharge. *Id.* He was diagnosed with purulent rhinitis. *Id.* He was not on medication at the time. On July 30, 2003, he returned with complaints regarding his ears and congestion. (Tr.

---

[5]Albuterol is a beta-agonist used to treat wheezing, shortness of breath, and troubled breathing caused by asthma, chronic bronchitis, emphysema, and other lung diseases. *See Medline Plus*, Albuterol, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682145.html

[6]A nebulizer is an electric- or battery-powered machine that turns liquid asthma medicine into a fine mist that is inhaled into the lungs.

[7]Cefzil is an antibiotic used to treat infections. PDR at 1038.

[8]Pulmicort is used to for the maintenance treatment of asthma in children. PDR at 826.

102). He was prescribed Augmentin[9] GS 600 mg, Albuterol 0.2ml, and Pediacare. *Id.*

On November 12, 2003, S.V.C. was taken to St. Anne General Hospital Emergency room. His mother complained of runny nose, coughing frequently, and fever. (Tr. 73). He was diagnosed with a viral syndrome with fever and Edwards was instructed to watch him. *Id.*

On November 13, 2003, he was again admitted to LJMC noted with purulent rhinitis. (Tr. 99). He was noted as on Mytussin AC syrup. *Id.* He was treated for fever and congestion, and his lungs were not able to clear when he coughed. (Tr. 100). His ears were red and dull and he was prescribed Augmentin, Pulmicort, and Tylenol. *Id.* Edwards was instructed to call in one month. *Id.*

On November 15, 2003, his mother returned him to the Emergency Room at St. Ann General Hospital with complaints of a weak cough and shakiness. (Tr. 69). He was diagnosed with omedia bilateral, bronchitis, and diaper dermatitis. *Id.* He was prescribed Augmentin and discharged and told to follow up with his pediatrician on Monday. *Id.* He was further prescribed Zithromax,[10] a cream, and Motrin. *Id.*

On November 16, 2003, he was taken to the emergency room. (Tr. 92). His mother complained that he was suffering with rectal bleeding. *Id.* On this occasion, he was admitted for four days and was diagnosed with enteritis, otitis media, and asthma. *Id.* at 93. He also had some mild wheezing. *Id.* Upon examination there were no significant findings with rectal examination as it was within normal limits. *Id.* His enteritis and otitis media resolved during his hospital stay. *Id.* His asthma condition improved somewhat, but he still had symptoms associated with the condition. *Id.*

While in the hospital, S.V.C. was placed on Pulmicort 0.25 mg via the nebulizer, Albuterol 0.25 cc in 2cc of normal saline every six hours via nebulizer, and a pulmonary toiletry was also ordered.

---

[9]Augmentin is an antibiotice used to treat infections. PDR at 1426.

[10]Zithromax is used for the treatment of infections. PDR at 2672.

*Id.* On the morning of discharge a lung examination showed a slight rhonchi, and he still had a slight amount of wheezing which the doctor thought would clear up with respiratory treatment. Id.     O December 3, 2003, he returned to LJMC for complaints of breathing, cough, and congestion. (Tr. 87). His lungs were not clear and his ears had not cleared. *Id.* He had no fever but was prescribed Albuterol and Ceftin[11] and instructed to return in two weeks. ( Tr. 87). However, he did not return on December 17, 2003. *Id.*

There is evidence of four visits in the record associated with asthma treatment in 2002. However in 2003, there is evidence of nine (9) visits associated with asthma or RAD.

According to the regulations these visits are because of "attacks" as defined by 20 C.F.R.§ 404(P)(Apx.1)(A)(3.00)(C). Attacks are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R.§ 404(P)(Apx.1)(A)(3.00)(C). Further, the claimant must show "information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs" and for asthma, "the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction." *Id.*

However, spirometric test are not administered to infants because they have trouble following instructions. Instead, when a child's signs and symptoms, medical history and physical examination suggest asthma, the doctor may prescribe a bronchodilator- a drug that opens the airways. When a child's signs and symptoms improve after using the bronchodilator, an asthma diagnosis is likely. *See* The Mayo Clinic, Asthma, http://www.mayoclinic.com/health/asthma/AS99999.

The medical research provides that when detecting signs of asthma, a physical examination of

---

[11]Ceftin is used for the treatment of infections. PDR at 1451

the upper respiratory tract, chest and skin are conducted. The doctor looks for increased nasal secretions, swelling or polyps. The presence of these signs suggest that allergies are responsible for asthma. One main sign of asthma is obstructed airways manifesting itself by wheezing. Eczema or hives are also often associated with asthma. *Id.*

First, the Court notes that at the time that S.V.C. began exhibiting symptoms associated with asthma, he was seven months old. Therefore, he could not submit to a spirometry as he was to young to follow the instructions of the treating physician.

Second, the court notes that Edwards testified during the administrative hearing that she administers a breathing machine to S.V.C. every four hours as needed when he starts wheezing too reduce the chance that he would have an asthma attack. (Tr. 169). She testified that her son's condition is such that she treats him everyday. She testified further that despite administering the breathing machine she sometimes has to take him to the hospital because it does not help to reduce his symptoms. (Tr. 170). The Court is of the opinion that there is sufficient evidence in the record documenting adherence to a prescribed regime of treatment.

The record in this case further shows that Edwards sought pediatric treatment and examinations at LJMC. According to the records presented, she sought treatment associated with asthma from June 12, 2002 through December 3, 2003. She further returned him for medical treatment associated with skin rashes, another symptom of asthma. (Tr. 83, 71, 70, 69, 66, 65). The record further shows hospitalization associated with asthma. Edwards routinely would take S.V.C. to the pediatric unit of the hospital for treatment of his Reactive Airway Disease/Asthma therefore she provided evidence documenting adherence to a prescribed treatment or regime. The Court therefore finds that S.V.C. met the 103.03(B) listing level requirement and that the ALJ's opinion is not based upon substantial evidence.

## V.     Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Edward's Supplemental Security Income Benefits on behalf of her minor son S.V.C. Jr., be **REVERSED and REMANDED for a determination of Benefits.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana this ____19th____ day of March 2007

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**